UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**LINDA S. STIVERS,**
        **Plaintiff**

**v.**                 **Civil Action No.**
                    **3:05CV451-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
        **Defendant**

## MEMORANDUM OPINION

This case presents plaintiff Linda Stivers' challenge to the decision of the Commissioner denying her claim to Disability Insurance Benefits. After examining the materials of record, the arguments of the parties, and the applicable authority, the Court is of the opinion that the decision of the Commissioner should be affirmed.

Ms. Stivers filed her application in September of 2003, alleging that she had been unable to engage in any substantial gainful employment since June of 2003. After a hearing, the Administrative Law Judge ("ALJ") determined that Ms. Stivers suffered from severe impairments that prevented her from performing any of her past relevant work, but that she retained the residual functional capacity to perform a significant range of light work.

If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm

in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Ms. Stivers contends that the ALJ erred in evaluating the effects of her obesity. She points out that upon elimination of a Listing explicitly applying to obesity, the Social Security Administration adopted a regulation stating, in part, that the ALJ must consider "any additional and cumulative effects of obesity" at each step of the sequential evaluation process. 20 CFR Pt. 404, Subpart P, Appendix A1, Section 1.00Q. She argues that the ALJ failed to comply with this directive.

The ALJ's opinion notes his consideration of Dr. Markert's March 2004 opinion that Ms. Stivers' most disabling problem appeared to be her obesity. Tr. 23, 150. Dr. Markert, a consulting examiner, opined that Ms. Stivers' problems (including her obesity) did not prevent her from ambulating without a walker, although they would prevent her from doing work requiring squatting, stooping, or crawling on a repetitive basis. Tr. 151. Significantly, throughout Dr. Markert's evaluation, he included consideration of the effects of Ms. Stivers' obesity on any other problems he uncovered. The ALJ, in turn, explicitly noted Dr. Markert's specific findings and opinions regarding various activities, thus considering the "additional and cumulative effects of obesity." The Court concludes that the ALJ did not disregard the requirements of the regulation concerning obesity.

Ms. Stivers next argues that the ALJ erred in evaluating her credibility. Credibility of the claimant is a significant consideration in the evaluation of pain, given that tolerance of pain is

very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987).

In this case, the ALJ agreed that Ms. Stivers' impairments would cause some discomfort and functional limitations, but he did not fully credit her testimony that her problems were as severe and unrelenting as she claimed. With respect to her complaints of pain, he referred to evidence of record that "often refers to the claimant's problems as being 'mild.'" Tr. 26. He noted that while she uses a walker and a cane, no physician has stated that she needs such assistive devices, and the record reflects that she can ambulate "well" without them. Tr. 239. The ALJ also noted her testimony that she drives "two, three times a week," that she attends church, and that she crochets baby blankets. Tr. 279-280. She cooks, but sometimes she will

start it and her husband finishes it. She could wash and dry the dishes if she took her time, but her husband does that. Tr. 280.

Thus, it appears that the ALJ complied with the legal requirements for evaluating Ms. Stivers' subjective complaints, and her argument here is essentially that the evidence could have led another fact-finder to a different conclusion from that reached by the ALJ in this case. However, the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). Regardless of what choices this Court or any other fact-finder might have made, the question is whether there is substantial evidence to support the ALJ's decision regarding Ms. Stivers' credibility. There is clearly substantial evidence to support the choice the ALJ made, and the Court finds no error.

Finally, plaintiff questions the ALJ's treatment of her psychological difficulties. She points to the consulting psychologist's opinion assigning her a Global Assessment of Functioning score of 50, and argues that this precludes gainful work. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuumof mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g.,

4

suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that, "occupational functioning" is but one of three fields considering in assessing the GAF. In this case, for example, Dr. Catt's assessment of functional capabilities explicitly addressed the circumstances of appropriate employment for the plaintiff, clearly indicating that he did not believe her to be incapable of gainful employment. Tr. 128.

Another problem with using the GAF as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

Consequently, while the GAF may represent a single piece of information to be

considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics. It necessarily follows that where there is specific information available, vacation of a decision solely on the basis of a GAF number is inappropriate.

In this case, notwithstanding Ms. Stivers' testimony that she was not aware of any emotional problems, the ALJ incorporated Dr. Catt's limitations into his vocational hypothetical. Dr. Catt opined that she was limited to simple repetitive tasks and low stress level employment, and that she should work alone or in small groups only.[1] Tr. 128. The vocational expert's identification of a substantial number of jobs includes precisely these limitations. Tr. 292-293.

An order in conformity has this day entered.

---

[1] Dr. Catt did not himself observe any difficulties of concentration or attention, so it is apparent that any reference to "variability" in this respect is limited to Ms. Stivers' self-report. This has been addressed as a credibility issue.